**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ALISON STEELE, INDIVIDUALLY | § | |
| AND ON BEHALF OF THE ESTATE OF | § | |
| CAYLEY MANDADI | § | |
|    Plaintiffs | § | |
| | § | |
| | § | |
| V. | § | CASE NO.  5:21-cv-21-780 |
| | § | |
| | § | |
| TRINITY UNIVERSITY and | § | |
| MARK HOWERTON | § | |
|    Defendants | § | |

### *DEFENDANT TRINITY UNIVERSITY'S*
### *INDEX OF STATE COURT PAPERS*

1.  Docket Sheet

2.  Plaintiff's Original Petition

3.  Citation – Trinity University served 7/20/21

4.  Original Answer of Defendant Trinity University

**EXHIBIT A**

## 225th District Court

# Case Summary

### Case No. 2021CI12882

**Alison Steele VS Trinity University ET AL**

§  Location: **225th District Court**

§  Judicial Officer: **225th, District Court**

§  Filed on: **06/28/2021**

---

## Case Information

Case Type:  OTHER INJURY OR DAMAGE

Case Status:  **06/28/2021  Pending**

---

## Assignment Information

**Current Case Assignment**
Case Number  2021CI12882
Court  225th District Court
Date Assigned  06/28/2021
Judicial Officer  225th, District Court

---

## Party Information

| | | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | **Estate of Cayley Mandadi** | **STILWELL, RICHARD T** *Retained* |
| | **Mandadi, Cayley Deceased** | **STILWELL, RICHARD T** *Retained* |
| | **Steele, Alison** | **STILWELL, RICHARD T** |

*Retained*

**Defendant**   **Howerton, Mark**

   **Trinity University**        **DURBIN, JENNIFER GIBBINS**
                                 *Retained*

---

## Events and Orders of the Court

---

06/28/2021   New Cases Filed (OCA)

06/28/2021   PETITION

06/28/2021   JURY FEE PAID

06/28/2021   REQUEST FOR SERVICE AND PROCESS

07/13/2021   **Citation**
             Trinity University
             Served: 07/20/2021
             Howerton, Mark
             Served: 08/03/2021

07/23/2021   **Citation**
             Trinity University
             Unserved
             Howerton, Mark
             Unserved

07/23/2021   RETURN OF SERVICE - SUCCESSFUL
                 *TRINITY UNIVERSITY*

08/10/2021   RETURN OF SERVICE - SUCCESSFUL
                 *MARK HOWERTON*

08/13/2021   ORIGINAL ANSWER OF
                 *TRINITY UNIVERSITY*

FILED
6/28/2021 10:55 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin

2cit pps   w jd

# 2021CI12882

CAUSE NO. _____

| | | |
|---|---|---|
| **ALISON STEELE, INDIVIDUALLY** | § | **IN THE DISTRICT COURT OF** |
| **AND ON BEHALF OF THE ESTATE OF** | § | |
| **CAYLEY MANDADI** | § | Bexar County - 225th District Court |
| | § | |
| **Plaintiffs** | § | |
| **vs.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **TRINITY UNIVERSITY and** | § | |
| **MARK HOWERTON** | § | |
| | § | |
| **Defendants.** | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE AND JURY OF THIS COURT:

Plaintiff Alison Steele, individually and on behalf of the Estate of Cayley Mandadi, files this Original Petition and Jury Demand against Defendant Trinity University ("Trinity") because its deliberate indifference and failure to intervene resulted in the preventable, tragic, and untimely death of its student, Cayley Mandadi, at the hands of Defendant Mark Howerton.

## I.   DISCOVERY CONTROL PLAN

1.      Trinity University's acts and omissions resulted in the horrific and preventable death of Cayley Mandadi. In the fall of 2017, Mark Howerton drugged, abused, physically abused, sexually abused, stalked, threatened, intimidated, coerced, and extorted one of Trinity University's cheerleaders, Ms. Cayley Mandadi. Ultimately, Mark Howerton physically and sexually assaulted Ms. Mandadi and killed her. Her death was preventable had Trinity timely intervened as it should have done. Trinity's refusal to respond to multiple reports of stalking, abuse, intimidation, domestic violence, and gender-based discrimination in violation of Title IX of the Education Amendments of 1927, 20 U.S.C. § 1681(a) resulted in Ms. Mandadi's death.

2.      Discovery in this case should be conducted under Level 2, pursuant to Rule

190.3 of the Texas Rules of Civil Procedure.  It is anticipated the Court will enter an appropriate Scheduling Order and/or Docket Control Order.

## PARTIES

**A.**   *Plaintiff*

3.   Plaintiff <u>Alison Steele</u> is an individual who lives in League City, Texas.

**B.**   *Defendant*

4.   Defendant <u>Trinity University</u> is a private university formed in Texas and having its principal place of business and headquarters in San Antonio, Texas.  This Defendant may be served with citation by serving its registered agent for service, **Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701**. *The Clerk is requested to prepare a citation and an appropriate summons so that they may be issued for service of process upon the Defendant.*

5.   Defendant <u>Mark Howerton</u> is an individual whose last known address is **2205 Martin Lane, Tyler Texas, 75701**. *The Clerk is requested to prepare a citation and appropriate summons so that this Defendant may be served at this address, or wherever he may be found.*

## II.   RULE 28

6.   If any Defendant is using, going by, or conducting business pursuant to a tradename or assumed name, or if any Defendant has licensed its name for use at the location where the Incident occurred, then Plaintiff hereby demands that upon answering this suit, Defendant identify the correct entity and move that any franchisee, partnership, unincorporated association, corporation, limited liability company, professional association, or individual doing business under an assumed name substitute a true and correct name.  Additionally, Plaintiff requests that the Court on its own motion substitute the true and correct name of any such Defendant. TEX. R. CIV. P. 28.

### III.    JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court because the acts and omissions at issue in this case arose in Bexar County, Texas, this case arises under the laws of the State of Texas, and because Plaintiff suffered damages within the jurisdictional limits of this Court. This Court may exercise personal jurisdiction over Defendant Trinity, a private university located in Bexar County, Texas. This Court may exercise personal jurisdiction over Defendant Howerton because he committed a substantial portion of his acts and omissions on the campus of Trinity University within Bexar County.

8.      Venue in Bexar County is proper pursuant to the general venue provisions contained in § 15.002(a)(1) of the Texas Civil Practices and Remedies Code. Because the events made the basis of this lawsuit took place in Bexar County, Texas, Bexar County is the county in which all or a substantial part of the events and omissions giving rise to the claim occurred. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Accordingly, venue is proper in Bexar County. *Id.*

### IV.    FACTUAL SUMMARY

9.      On October 29, 2017, Trinity University sophomore, 19-year-old Cayley Mandadi, was admitted to Ascension Seton Hayes Hospital in Kyle, Texas, suffering from blunt force trauma, having been bruised, beaten beyond recognition, and sexually assaulted by Mark Howerton. The emergency care Ms. Mandadi received could not save her, and she succumbed to her injuries on October 31, 2017.

10.     Trinity University is a private school located in San Antonio, Texas, consisting of approximately 2,300 undergraduate students. Trinity claims to value integrity, community and the value of each and every student. At the time of her death, Ms. Mandadi was a sophomore student, sorority member and cheerleader at Trinity University, and was actively involved in campus life,

3

living in the school's dormitories and spending the vast majority of her time on-campus and participating in university activities.

11.     Cayley Mandadi was not just any student—she was the face of the University at athletic events through her active participation on the Trinity University cheerleading squad.

12.     It was at Trinity, through her cheerleading activities, where Ms. Mandadi met Mark Howerton. While not a student, Mark Howerton was often found on campus, working out in the University gym or hanging around and near the members of the football team. Indeed, upon information and belief, Howerton used the gym and fraternized with the football team as part of his active provision of steroids and other illegal drugs to members of Trinity University's football team. It was through his use of the campus facilities and interaction with the athletic teams that Howerton came to know Ms. Mandadi, a star member of the university's cheerleading squad.

13.     Shortly after beginning a relationship with Mark Howerton, Ms. Mandadi realized he was violent, possessive, obsessive, and dangerous. In the time she knew Howerton, she tried to break off her relationship and dealings with him multiple times, to no avail. Without support or help from the University, Ms. Mandadi fell victim to his constant obsessive manipulation which included stealing her phone, cutting off her contact with her friends, prevention of her participation in activities at her sorority, and interruption of her cheerleading activities and interaction with the Trinity University football team members. In full view and knowledge of the University, its resident advisors, its athletic trainers, its police force, and its management, Howerton isolated Ms. Mandadi and cut her off from any support or help.

14.     Ms. Mandadi was physically and sexually abused multiple times throughout the weeks that Howerton claimed to be dating her, with Howerton once pulling a gun from his car's glove compartment threatening to shoot members of the football team who were considering

4

intervening on her behalf. Howerton was also seen physically abusing Ms. Mandadi in her dorm room on campus in one of his fits of rage.

15.     Ms. Mandadi lived on campus in dormitories that were owned, managed, and (supposedly) monitored by Trinity University. Trinity University employed resident advisors (RAs) in the dormitory, and used its on-campus police force to monitor and maintain the peace and security of Ms. Mandadi's dormitory.

16.     Even though Ms. Mandadi lived on campus, Trinity took no action to protect her or any of its students from Mark Howerton in violation of common sense, common decency, and Trinity's own policies. On September 24, 2017, just over one month before Ms. Mandadi was murdered, Howerton showed up at Ms. Mandadi's dorm room, furious at her for having gone out against his wishes. When he realized Ms. Mandadi was not home, he destroyed her dorm room. Neighboring students overheard the commotion and reported it to campus police. When campus police arrived, they found Howerton in Ms. Mandadi's empty dormitory. Mark Howerton had broken the glass door to the balcony in Ms. Mandadi's room; poured alcohol and soft drinks on her bed and possessions; and threw her clothes and possessions off of the balcony out of the dorm room. During this episode, he was heard threatening Ms. Mandadi's life, and this information was reported to Trinity University. Both Trinity's R.A.s and Trinity's on-campus police force responded, and both knew that Howerton had committed significant acts of personal violence to the dorm room directed at Ms. Mandadi. Trinity's R.A.s and Trinity's on-campus police force were also told of Howerton's threats to smash Cayley Mandadi's face and/or to commit significant bodily harm to Cayley Mandadi.

17.     After a cursory discussion with Howerton, Trinity's police officers let him go, but failed take any further action to protect Cayley Mandadi. These officers also failed to prevent

Mark Howerton's theft of Ms. Mandadi's backpack containing her lap top computer, cheer leading gear, and personal property.  Howerton later destroyed the computer and threw her cheerleading gear into the street, and threatened Ms. Mandadi's health, well-being, and life in front of members of Trinity University's football team.

18.      Fully aware of the danger Cayley Mandadi was in, Trinity blamed Ms. Mandadi and held her responsible for the damage to her dormitory, even though she had not been present when the ransacking and destruction occurred. Trinity had the power and authority to act in response to the September 24 incident, and did so by blaming rather than helping Ms. Mandadi.

19.      As such, Trinity University engaged in the classic behavior of blaming the victim, Ms. Mandadi, and instituted disciplinary charges against her.   Even though she was clearly the victim of stalking, harassment, domestic violence and intimidation, the only thing Trinity cared about was money and therefore held Ms. Mandadi responsible for the attack and resulting property damage to her dorm. In violation of its duties and its own policies, Trinity University did nothing to inform or notify Ms. Mandadi's parents of her plight or its intention to blame Ms. Mandadi by holding her responsible for the damage done by Mark Howerton.

20.      Trinity had the full power to apprehend Howerton for destruction of property, or at any point that Howerton appeared on campus after the September 24, 2017, incident. While Trinity instructed Howerton to remain off-campus, in actuality the University was indifferent to this whereabouts and did nothing to enforce any of its so-called restrictions against him. Despite controlling the premises and owing a duty to protect Ms. Mandadi from the known threat, Trinity University did nothing even after its own surveillance captured Howerton showing up at Ms. Mandadi's dorm repeatedly following the September 24, 2017, incident, including:

   •   Friday, October 27·2017 at 7:00 p.m.

6

- Saturday, October 28, 2017 at 1:03 a.m.

- Saturday, October 28, 2017 at 4:19 p.m.

- Saturday, October 28, 2017 at 4:54 p.m.

- Sunday, October 29, 2017 at 10:22 a.m.

- Sunday, October 29, 2017 at 2:26 p.m.

On Sunday, October 29, 2017, campus surveillance recorded Howerton taking Cayley Mandadi away her Trinity dormitory in his black Mercedes Benz. This was the last time Cayley Mandadi was seen alive. Despite Mark Howerton's known history of violence, threats against Cayley Mandadi, threats against other students at Trinity University, and frequent presence at Ms. Mandadi's dorm, Trinity did absolutely nothing to protect Ms. Mandadi, its student and resident.

21.    On October 29, 2017, Mark Howerton drugged Ms. Mandadi, and used the drugs to coerce and force her to leave the Mala Luna festival. That night Howerton raped, sexually assaulted, physically assaulted, beat, and killed Ms. Mandadi. Moreover, Howerton failed to timely obtain medical help for Ms. Mandadi. By the time he did decide to drive her to a hospital after he was finished strangling, beating and raping her, it was too late for trained medical professionals using the best of their abilities to save her.

22.    Pursuant to 20 U.S.C. § 1092(f), the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act"), colleges and universities such as Trinity University are required to disclose, warn, and respond to certain crimes on and around their campuses. These crimes include dating violence (*see* Texas Family Code § 71.0021, defining dating violence as act committed against victim in a dating relationship with the actor done with the intent to physically injure or reasonably make the victim afraid of imminent physical harm) and stalking (*see* Texas Penal Code § 42.072, defining stalking as more than one threatening acts

7

directed at another that would cause a reasonable person to fear bodily injury or death).

23.     In recognition of its obligations under state and federal law, Trinity has published a Policy Prohibiting Sexual Harassment and Sexual Misconduct, which includes prohibitions against domestic violence dating violence and stalking. In its policy, Trinity promises to investigate and respond to potential dating violence, and to provide supportive measures to any student impacted, including counseling, mental health support and assistance with reporting the matter to law enforcement. Trinity's policies reflect the University's knowledge of the threat of domestic violence facing its students and the fact that Trinity has the authority and ability to aid and protects residents and members of its community. Trinity ignored its own policies, along with the moral and legal obligations impacting the university, through its acts and omissions in responding to Howerton's violent and threatening actions against a young female student.  Indeed, rather that providing assistance and support as its published policies for students and parents promise, Trinity University turned on Ms. Mandadi and blamed her for her plight.

## V.   DELIBERATE INDIFFERENCE UNDER TITLE IX (TRINITY UNIVERSITY)

24.     Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

25.     Trinity University is a private University that receives federal funds and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"). Trinity had previously appointed its Associate Vice President and Dean of Students David M. Tuttle ("Dean Tuttle") to serve as Title IX Deputy Coordinator for the University while Ms. Mandadi was alive.

26.     A large part of Howerton's ongoing stalking and harassment of Ms. Mandadi occurred on campus and in Ms. Mandadi's dormitory, which was subject to the control and authority of Trinity's housing program and campus police.  Howerton's threats, and his abuse of Cayley Mandadi was known to Trinity's students, resident advisors, campus police, and

8

administrators, but Trinity took no action. Instead of taking action to protect Ms. Mandadi as it promises to do in its policies, Trinity University chose instead to blame her -- the victim - and institute disciplinary charges against Ms. Mandadi for Mr. Howerton's acts.

27.     Trinity, through its Department of Housing, Trinity University Police Department ("TUPD" or "campus police"), resident advisors, athletics department, and disciplinary committee possessed actual knowledge that Mark Howerton was harassing Cayley Mandadi, and that she was in danger that she could not get away from by herself.

28.     Indeed, Trinity University possessed specific knowledge of the September 24, 2017, incident wherein Howerton ransacked Ms. Mandadi's dorm room, threatened her well-being, and directed violence towards Cayley Mandadi, and obtained additional information during the disciplinary hearing that it made Ms. Mandadi endure. Dean Tuttle participated in the disciplinary proceedings where the University blamed Ms. Mandadi, rather than supporting her and protecting her. Dean Tuttle, as well as members of Trinity University's management, received and possessed ample information to realize that Cayley Mandadi was a victim of dating violence, sexual assault, and sexual harassment.

29.     The knowledge of Trinity's employees and agents, including but not limited to university officials, campus police, and even Dean Tuttle, is imputed to Trinity, which is liable for its inaction.

30.     Trinity University had the authority and ability to take appropriate and timely action to protect Cayley Mandadi by:

      a.  Enforcing Trinity's policies and procedures;

      b.  Investigating allegations against Howerton;

      c.  Informing Ms. Mandadi's parents and family about the disciplinary hearing;

d.  Providing victims counseling or other aid;

e.  Providing educational training;

f.  Alerting other departments and individuals within Trinity, including campus police and Trinity's on-campus housing

g.  Providing safety and protective measures;

31.     Despite its authority and ability to help, Trinity was deliberately indifferent to the ongoing stalking, intimidation, manipulation, domestic violence, dating violence, sexual harassment, and gender based discrimination occurring on its own campus and directed at a teenage student. Trinity ignored and failed to follow its own policies and procedures for the protection of students from sexual harassment and sexual misconduct. Trinity's inaction made Ms. Mandadi more vulnerable to the stalking, abuse, intimidation, dating violence and gender based discrimination that created a hostile educational environment for Ms. Mandadi. Trinity's institution of penalties against Ms. Mandadi after she was the victim of stalking and harassment alienated her from the University, compromising her faith that the University where she lived would listen to her or care about the danger she was in. Trinity's efforts to blame Ms. Mandadi directly contradicted and violated the policies of unquestioning safety, support, and help that Trinity had published and distributed to students and parents, and that Trinity continues to distribute to prospective students and parents. Trinity's response to Ms. Mandadi's plight was unreasonable and unconscionable, and ultimately resulted in Ms. Mandadi's death.

## VI.  VIOLATION OF EQUAL PROTECTION UNDER 42 U.S.C. § 1983 (TRINITY UNIVERSITY)

32.     Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

33.     Trinity University is a private University that receives federal funds and is subject to the equal protection clauses afforded by the Fourteenth Amendment of the United States

10

Constitution.

34.     42 U.S.C. § 1983 allows persons deprived of any rights, privileges or immunities secured by the Constitution and its laws to bring an action against the liable party.

35.     Trinity had a duty to respond to the known stalking, abuse, intimidation, domestic violence, dating violence and gender-based discrimination against Cayley Mandadi.

36.     In fashioning a response to Howerton's abuse, Trinity and Trinity employees, agents, and other authority figures based their decisions on gender stereotypes through the application of inaccurate assumptions about men and women in society, including that men have a legitimate reason for abusing or harassing women; that women deserve, encourage or provoke the harassment that they receive; that women have the power to end harassment or abuse on their own; and that a woman being harassed will always seek help on her own; among others.

37.     Trinity's gender-based discrimination violated Cayley Mandadi's right to equal protection under the Fourteenth Amendment of the United States Constitution, and acquiesced to the stalking, abuse and intimidation impacting Ms. Mandadi.

38.     Indeed, rather than "promptly, fairly, and equitably" investigating its knowledge of Ms. Mandadi's abuse and sexual harassment in an "impartial manner" as Trinity University's policies claim it will do, Trinity University instead decided to blame the victim – Cayley Mandadi. Trinity's use of classification based on gender deprived Ms. Mandadi of equal protection under the law, exposing her to future stalking, abuse, intimidation and dating violence while effectively condoning Mr. Howerton's conduct.

39.     Trinity's efforts to blame Ms. Mandadi directly contradicted and violated the policies of unquestioning safety, support, and help that Trinity had published and distributed to students and parents, and that Trinity continues to distribute to prospective students and parents.

11

40.     The deprivation of equal protection under the law exposed Ms. Mandadi to Mark Howerton's ongoing abuse, and left her without help, support, or protection, that ultimately resulted in Cayley Mandadi's sexual abuse and brutal murder.

## VII.  NEGLIGENCE (TRINITY UNIVERSITY)

41.     Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

42.     Ms. Mandadi's personal and academic life were entwined with the University, where she was an athlete and proud member of the Trinity University cheerleading squad.  Trinity owed a duty of care to all of its students and members of the campus community, particularly students such as Ms. Mandadi living in the university's on-campus housing and committing their social lives to the University's athletic teams.

43.     Dating violence, sexual harassment and abuse on campus is a known problem impacting college communities nation-wide, resulting in the development of federal law designed to protect college students. The prevalence and predictability of assault, dating violence and other abuse on college campus illustrates the foreseeability that Trinity would encounter sexual abuse involving its own students, including Ms. Mandadi. Indeed, Trinity University claims to possess policies to prevent dating violence, sexual harassment, and sexual misconduct, demonstrating Trinity's knowledge of these events on its campus and the impact of these crimes on its student body.

44.     In this case, Trinity University had actual knowledge that Ms. Mandadi was the victim of dating violence, sexual harassment, and sexual and physical assault.  Despite Trinity University's knowledge of the events that were emotionally, sexually and physically injuring Ms. Mandadi on its campus, the University took no actions to stop or prevent the injuries to Ms. Mandadi from occurring. Trinity University ignored Howerton's attacks, took no action to protect

12

Ms. Mandadi, and blamed Ms. Mandadi for actions and destruction of campus property that it knew Howerton had committed. Rather than protecting its student, as it had a statutory, common law, and moral obligation to do, Trinity University condoned the on-going stalking, harassment and abuse by blaming Ms. Mandadi and allowing it to continue.

45.     The University had knowledge of the abuse and the danger to Cayley Mandadi. The school knew who the abuser was – Mark Howerton – and its police force had even questioned him once during one of his violent outbursts in a campus dorm. The school possessed the ability to act and to protect Cayley Mandadi before she was killed, but failed to do so.

46.     Trinity's efforts to blame Ms. Mandadi directly contradicted and violated the policies of unquestioning safety, support, and help that Trinity had published and distributed to students and parents, and that Trinity continues to distribute to prospective students and parents. Indeed, the University possessed a policy that required the University to contact and notify Ms. Mandadi's parents in the face of the disciplinary hearing where it decided to blame Ms. Mandadi for Howerton's dorm room destruction. The University ignored the policy and violated it by failing to provide any notice of the disciplinary proceedings, or the known sexual and physical abuse being incurred by Ms. Mandadi. Had the University notified Ms. Mandadi's parents pursuant to its stated and written policy, Ms. Mandadi might be alive today.

47.     Trinity University's negligence and/or negligence *per se* proximately caused damages to the Plaintiff. Specifically, Defendant breached the duty of care owed to the Plaintiff by:

        a.  Failing to train faculty, staff and students regarding identifying stalking, dating violence, sexual harassment, and sexual misconduct impacting anyone in its student body;

        b.  Failing to train faculty, staff and students regarding responding to stalking, dating violence, sexual harassment, and sexual misconduct impacting anyone in its student body;

c. Failing to train faculty and staff regarding Trinity's duties, requirements and obligations under Title IX;

d. Failing to respond to the known stalking, dating violence, harassment, and intimidation of Ms. Mandadi on Trinity's campus;

e. Failing to follow the University's own procedures in responding to known instances involving stalking, dating violence, harassment, and intimidation;

f. Failing to enforce its own guidelines and procedures regarding persons allowed on campus;

g. Failing to notify Ms. Mandadi's parents and guardians regarding the disciplinary hearing involving Ms. Mandadi;

h. Failing to maintain safe premises for its students regardless of their gender.

Defendants' breach of these duties and more proximately caused Cayley Mandadi's death. Each of the foregoing acts and/or omissions, singularly or in combination with others, constituted negligence and negligence per se by Defendant, which was a proximate cause of Plaintiff's resulting permanent injuries and damages forming the basis of this action.

### VIII. ASSAULT, SEXUAL ASSAULT, & RAPE (MARK HOWERTON)

48.     Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

49.     Throughout the fall of 2017, Mark Howerton assaulted and sexually assaulted Ms. Mandadi multiple times. Howerton used drugs, threats, and blackmail to coerce her into seeing him and having sex with him. Howerton stole Ms. Mandadi's phone and used it to control her and coerce her submission. Howerton also threatened Ms. Mandadi, and Ms. Mandadi's friends with physical violence if she refused to comply. Howerton's control and influence over Ms. Mandadi rendered any consent – if any – meaningless. Howerton knew it but continued to pray on her and take advantage of her, nonetheless.

50.     On the night of her death, Mark Howerton intentionally assaulted and sexually assaulted Cayley Mandadi after providing her with illegal drugs to the point where she could not,

under any circumstances, lawfully consent. During his sexual assault, Howerton caused severe head trauma to Cayley Mandadi by slamming her head into the frame and door of his car. Howerton also beat her, punched her, and strangled her with his hands to the point where she was unconscious. Indeed, after his attack, Howerton's hands were noticeably bruised and swollen. Despite causing severe injuries to Cayley Mandadi, Howerton continued in his actions until Ms. Mandadi was rendered unconscious and comatose.

51.     In the course of this final attack on Cayley Mandadi, Howerton sexually assaulted and raped Ms. Mandadi.

52.     Howerton's intentional, deliberate physical and sexual assault of Ms. Mandadi proximately caused her severe physical injuries, physical and emotional trauma, suffering and death.

### IX.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MARK HOWERTON)

53.     Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

54.     Throughout the fall of 2017, Mark Howerton assaulted and sexually assaulted Cayley Mandadi multiple times. Howerton used drugs, threats, and blackmail to coerce her into seeing him and having sex with him. Howerton stole Ms. Mandadi's phone and used it to control her and coerce her submission. Howerton also threatened Cayley Mandadi, and Ms. Mandadi's friends with physical violence if she refused to comply. Mr. Howerton's control and influence over Cayley Mandadi rendered any consent – if any – meaningless. Mr. Howerton knew it but continued to prey on her and take advantage of her, nonetheless.

55.     Howerton's intentional threats, coercion, use of drugs, and emotional blackmail proximately caused Ms. Mandadi to suffer severe emotional harm, injuries, and suffering until Howerton killed her.

## X.   NEGLIGENCE (MARK HOWERTON)

56.   Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

57.   Mark Howerton's criminal defense team has argued that Cayley Mandadi was injured and died due to the drugs that Howerton provided to her and insisted that she take. While she died at the hands of Howerton, not his drugs, if a jury decides to buy in to this defense, then Howerton's negligent provision of illegal drugs to Cayley Mandadi caused her death.

58.   Additionally, despite knowing that he had drugged her, and despite his non-consensual "rough sex" (as his criminal defense team alleges, which was actually rape and sexual assault of Ms. Mandadi) that resulted in severe physical injuries and trauma to Cayley Mandadi, Howerton took no action and made no effort to timely seek medical attention for Ms. Mandadi after causing her injuries. Howerton continued to sexually assault and rape Ms. Mandadi in her comatose state until it was too late to save her. His failure to provide her with medical assistance, or to seek out medical assistance for her, breached the duty of care owed under the circumstances.

59.   By the admissions of Howerton's criminal defense team, Mark Howerton's actions constitute negligence – at a minimum – and proximately caused Ms. Mandadi's severe physical injuries, physical and emotional trauma, suffering and death.

## XI.   GROSS NEGLIGENCE (ALL DEFENDANTS)

60.   Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

61.   Defendants' acts and/or omissions which, when viewed objectively from the standpoint of Defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff. Defendants had an actual, subjective awareness of the extreme risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and/or welfare of Plaintiff. Trinity University holds

16

itself out as a safe and supportive college campus and uses its policies to attract and convince prospective students and their parents to the university.  However, in Cayley Mandadi's case, Trinity University blatantly ignored and contradicted these policies.   Apparently, Trinity University's policies prohibiting sexual harassment and sexual misconduct serve as good marketing tools, but they are not policies that Trinity University actually enforces or follows, despite Trinity's objective, written, published, knowledge of the dangers of sexual harassment, sexual assault, "intimate partner violence," "dating violence," domestic violence, stalking, coercion, and use of force to obtain consent. Trinity University's decision to "blame the victim" by turning on Cayley Mandadi and forcing her to endure a humiliating and emotionally devastating disciplinary proceeding for the damage that Trinity University knew Mark Howerton caused, should serve as a warning to every prospective student and their parents.

62.     Mark Howerton intentionally assaulted and sexually assaulted Ms. Mandadi after providing her with illegal drugs to the point where she could not, under any circumstances, lawfully consent.  Despite causing severe injuries to Cayley Mandadi, Howerton continued in his actions until she was rendered unconscious.  Howerton knew that he had caused severe head trauma, physical injuries, and sexual injuries to Ms. Mandadi, but persisted in his actions to the point that she was unconscious, non-responsive, and put in a coma.  Even after causing this harm to Cayley Mandadi, Mr. Howerton refused to provide her with medical assistance until it was too late to save her life.

63.     Therefore, Plaintiff seeks exemplary damages from Defendants in an amount to be determined by the trier of fact.

## XII.  DAMAGES

### A.  SURVIVAL CLAIM

64.      Plaintiff adopts the foregoing paragraphs and incorporate them by reference.

65.      As a direct and proximate result of Trinity's actions, inactions, deliberate indifference to and violation of Cayley Mandadi's clearly established Constitutional and federal rights, Ms. Mandadi suffered catastrophic injuries, including emotional distress, sexual harassment, sexual abuse, severe physical harm and ultimately death. Trinity is independent liable for its actions and inactions in light of the knowledge it had of the danger Ms. Mandadi was in during the days leading up to her death.  Indeed, rather than supporting and protecting Ms. Mandadi, Trinity University added to her harm and emotional distress by blaming her.

66.      Ms. Mandadi was severely beaten by Mark Howerton, sexually abused by him, and spent hours in his car in pain, anguish, and agony until she ultimately fell unconscious, unable to sustain any further suffering or abuse. Cayley Mandadi was on life support for two additional days, reliving these events in her mind, before she was declared brain dead and died from her injuries.

67.      Cayley Mandadi passed away as a result of her injuries on October 31, 2017. Pursuant to the Texas Survival Statute, codified in Chapter 71 of the Texas Civil Practice & Remedies Code, Cayley Mandadi's estate is entitled to recover for her damages.

### B.  WRONGFUL DEATH CLAIM

68.      Plaintiffs adopt the foregoing paragraphs and incorporate them by reference.

69.      Cayley Mandadi was only 19 years old when she died, and left behind her mother, Alison Steele. Cayley Mandadi was Ms. Steele's only child, and the impact of losing her child cannot be fully described in words. Defendants' conduct proximately caused life-altering grief for Ms. Steele, who has dedicated her life to honoring her late daughter's memory. Defendants' conduct proximately caused the Plaintiff's unending grief, heartache, pain, loss, emptiness,

18

distress, sorrow, and damages.

**C.   INTEREST**

70.    Upon a final judgment, Plaintiff seeks recovery of all pre-judgment and post-judgment interest at the maximum rate allowed by law.

**D.   REQUIRED STATEMENTS CONCERNING THE RANGE OF DAMAGES**

71.    Texas law requires a Plaintiff to make certain statements concerning the range of damages being sought. Nothing can replace the loss of Ms. Steele's only child, but monetary compensation can be used to hold the Defendants accountable and to prevent such intentional, grievous, negligent, and callous conduct from occurring in the future. The Plaintiffs' damages are within the jurisdictional limits of the Court. Plaintiffs seek monetary relief in excess of $1,000,000. The foregoing allegation of monetary relief sought is made at this time pursuant to Rule 46 and is based upon information and belief. Plaintiffs reserve the right to amend this petition, including the foregoing allegation of the monetary relief sought, as further information becomes available.

## XIII.  EXEMPLARY DAMAGES

72.    When viewed objectively form the standpoint of the Defendants at the time of the occurrence, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. In addition, the Defendants were actually and subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, which constitutes gross negligence as that term is defined pursuant to §41.001(11), Texas Civil Practice and Remedies Code. Therefore, Plaintiffs seek exemplary damages in an amount to be determined by the trier of fact. The grossly negligent acts and/or omissions of Defendants were a proximate and/or producing cause of Cayley Mandadi's

resultant injuries, damages, and death.  Pursuant to Chapter 41.003(a)(1)–(2) of the TEX. CIV. PRAC. & REM. CODE, Plaintiff seeks and is entitled to exemplary damages in this case.

## XIV.  STATUTE OF LIMITATIONS

73.     Just as Trinity University blamed Cayley Mandadi for the violence and sexual assault she suffered on-campus at the hands of Mark Howerton, and just as Howerton's criminal defense team has blamed the drugs that Howerton made Ms. Mandadi take, Plaintiff expects that both Defendants will try to blame Plaintiffs for bringing this case "too late."  To the contrary, Texas law establishes a five year statute of limitations in the event that an "injury arises as a result of conduct that violates" Section 22.011 of the Texas Penal Code involving sexual assault or Section 22.021 of the Texas Penal Code involving aggravated sexual assault.  TEX. CIV. PRAC. & REM. CODE § 16.0045.  This statute extends the five year statute of limitations to the claims and causes of action against Trinity University.  *Stephanie M. v. Coptic Orthodox Patriarchate Diocese*, 362 S.W.3d 656 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

74.     Cayley Mandadi died on October 31, 2017, and this case has been timely filed well within the five-year anniversary of her death.

## XV.  DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial and is paying the associated fees with this filing.

## XVI.  INITIAL DISCLOSURES

75.     Pursuant to revised Rule 194 of the Texas Rules of Civil Procedure, Defendants must serve their Initial Disclosures and Production of Documents on Plaintiffs within 30 days of filing its answer or general appearance.

## XVII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Alison Steele, individually and on behalf of the Estate of Cayley Mandadi, respectfully prays that Defendants be cited to appear and answer the claims made the basis of this lawsuit. Plaintiffs also pray that, upon the jury trial of this case, Plaintiffs be awarded a judgment against Defendants for all damages, injuries, costs and expenses incurred by Plaintiffs, including costs of court, attorney's fees, pre-judgement and post-judgment interest at the maximum legal rate and in an amount to be determined by a jury within the jurisdictional limits of this Court, and for all other relief, general and special, at law and in equity, as Plaintiffs may be justly entitled.

Respectfully submitted,

By: */s/ Tom Stilwell*
    Richard T. Stilwell
    Texas Bar No. 00791737
    Amanda R. Pierson
    Texas Bar No. 24089258
    STILWELL LAW FIRM, PLLC.
    214 GLENWOOD DRIVE
    Houston, Texas 77007
    Telephone: (713) 931-1111
    Facsimile: (713) 931-1211
    Tom@TStilwell.com
    Amanda@TStilwell.com

    Email for Service: e-filing@tstilwell.com

    **ATTORNEYS FOR ALISON STEELE,**
    **INDIVIDUALLY AND ON BEHALF OF**
    **THE ESTATE OF CAYLEY MANDADI**



**Capitol Corporate Services, Inc.**
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

## Service Of Process Transmittal Notice

| RACHEL ROLF<br>TRINITY UNIVERSITY<br>ONE TRINITY PLACE<br>SAN ANTONIO TEXAS 78212 | **Date Processed:** | 07/20/2021 |
|---|---|---|
| | **Completed By:** | JOE DIGAETANO |
| | **Delivery Method to Client:** | FEDEX 2 DAY LETTER |
| | **Tracking Number:** | 176774817440 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| **Date / Time Received**<br>07/20/2021  3:30 PM in TEXAS | **Transmittal #**<br>TX-207869 | **Delivered to Agent by**<br>PROCESS SERVER |
|---|---|---|

| **With Regard to Client** |
|---|
| TRINITY UNIVERSITY |

| **Title of Case or Action** |
|---|
| ALISON STEELE, ET AL. VS. TRINITY UNIVERSITY, ET AL. |

| **Case Number**<br>2021CI12882 | **Type of Document Served**<br>COMPLAINT/PETITION |
|---|---|

| **Court Name** |
|---|
| 225TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS |

| **Note** |
|---|
| |



1-207869Q

PRIVATE PROCESS

**Case Number: 2021CI12882**

Alison Steele VS Trinity University ET AL
(Note. Attached Document May Contain Additional Litigants)

IN THE 225TH DISTRICT COURT
BEXAR COUNTY, TEXAS

**CITATION**

"THE STATE OF TEXAS"

**Came To Hand:** 7/20/2021 @1:00PM

Directed To:   **TRINITY UNIVERSITY**
**BY SERVING ITS REGISTERED AGENT CAPITOL CORPORATE SERVICES INC**

**Delivered:** 7-20-21

**By:** PM 30/3

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00am on the Monday next following the expiration of twenty days after you were served this CITATION and PETITION a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org" Said ORIGINAL PETITION AND JURY DEMAND was filed **28th day of June, 2021.**

ISSUED UNDER MY HAND AND SEAL OF SAID COURT 13th day of July, 2021.

RICHARD T STILWELL
ATTORNEY OF PLAINTIFF
1301 MCKINNEY ST 5100
HOUSTON TX 77010-9976



Mary Angie Garcia
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: /s/ Alexandra Johnson
Alexandra Johnson, Deputy

---

ALISON STEELE VS TRINITY UNIVERSITY ET AL

Case Number: 2021CI12882
225th District Court

**Officer's Return**

I received this CITATION on the _____ day of _____, 20_____ at _____ o'clock ____M. and ( ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION AND JURY DEMAND the date of delivery endorsed on it to the defendant _____ in person on the _____ day of _____, 20____ at _____ o'clock ____ M. at _____ or ( ) not executed because _____

Fees: _____ Badge/PPS #: _____ Date certification expires: _____

_____ County, Texas

BY: _____

OR. VERIFICATION OF RETURN (if not served by a peace officer) SWORN TO THIS _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____ County.

I declare under penalty of perjury that the foregoing is true and correct  Executed in _____ County, State of Texas, on the _____ day of _____, A.D., _____.

_____
Declarant

FILED
8/13/2021 10:11 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Stephanie West
Bexar County - 225th District Court

**CAUSE NO. 2021CI12882**

| | | |
|---|---|---|
| ALISON STEELE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CAYLEY MANDADI<br>    Plaintiffs | §<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§<br>§ | 225ᵀᴴ JUDICIAL DISTRIXT |
| TRINITY UNIVERSITY and MARK HOWERTON<br>    Defendants | §<br>§<br>§ | BEXAR COUNTY, TEXAS |

*ORIGINAL ANSWER OF DEFENDANT TRINITY UNIVERSITY*

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW TRINITY UNIVERSITY, one of the Defendants in the above styled and numbered cause, and files this its Original Answer and would respectfully show the Court as follows:

**I.**
**FAILURE TO STATE A CLAIM**

Plaintiffs' Original Petition fails to state a claim against Defendant TRINITY UNIVERSITY upon which relief can be granted.

Plaintiffs' Original Petition fails to state a valid claim for violations of Title IX against Defendant TRINITY UNIVERSITY due to Plaintiffs' failure to plead specific facts supporting a plausible inference that Defendant TRINITY UNIVERSITY was deliberately indifferent to any known sexual harassment or sexual misconduct.

Defendant TRINITY UNIVERSITY denies that there is jurisdiction over claims for which Plaintiff Alison Steele lacks standing. Some of Plaintiff's claims, including those based on a general heightened risk of sexual harassment and sexual assault, are speculative, non-justiciable, and fail to meet the Article III case and controversy requirement.

This Court lacks subject matter jurisdiction over Plaintiff's claims because she has failed to allege a concrete injury in fact that is fairly traceable to Defendant TRINITY UNIVERSITY's actions. The claim that Defendant TRINITY UNIVERSITY's alleged actions and omissions created a heightened risk of sexual harassment and sexual assault is speculative, non-justiciable, and fails to meet the Article III case and controversy requirement.

## II.
### THE ESTATE OF CAYLEY MANDADI IS NOT A PROPER PARTY

Defendant TRINITY UNIVERSITY specifically pleads that any Plaintiff, including Alison Steele, who may allege to plead or act "on behalf of the Estate of Cayley Mandadi" is an improper party plaintiff who has failed to state a proper cause of action. TEX. R. CIV. P. 91a. Plaintiff Alison Steele is not an authorized representative with legal authority to bring this action as representative of or on behalf of the Estate of Cayley Mandadi, deceased. Plaintiff Alison Steele has failed to provide proof of qualification of such authorization or appointment to serve as executrix or administratrix of Decedent's estate. TEX. ESTATES CODE § 305.002. Accordingly, Plaintiff Alison Steele does not have standing to bring suit on behalf of the Estate of Cayley Mandadi and has failed to state a proper cause of action. Any cause of action brought on behalf of Decedent's estate has no basis in law or fact. TEX. R. CIV. P. 91a.

## III.
### AFFIRMATIVE DEFENSES

In asserting the following defenses, Defendant TRINITY UNIVERSITY does not admit that the burden of proving the allegations or denials contained in the defenses is upon Defendant TRINITY UNIVERSITY but, to the contrary, that the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon Plaintiffs. Moreover, in asserting any defense, Defendant TRINITY

UNIVERSITY does not admit any liability, but, to the contrary, specifically denies any and all allegations of liability in the Plaintiffs' lawsuit. Without admitting liability as to any of Plaintiffs' causes of action, Defendant TRINITY UNIVERSITY asserts the following defenses:

1.     Defendant TRINITY UNIVERSITY affirmatively pleads and alleges that the causes of action alleged against it by Plaintiff are barred by the applicable statute of limitations. Defendant TRINITY UNIVERSITY further specially alleges that all of Plaintiffs' claims are barred by the doctrine of *laches*. Specifically, Plaintiffs' claims are based upon alleged acts that occurred more than two (2) years before Plaintiffs filed this lawsuit on June 28, 2021. Therefore, Plaintiffs' claims for recovery are barred by the applicable statutes of limitations under Section 16.003 of the Texas Civil Practice & Remedies Code and the doctrine of *laches* because Plaintiffs did not timely pursue any claim they may have had against Defendant TRINITY UNIVERSITY. Section 16.0045 of the Texas Civil Practice & Remedies Code is not applicable to claims alleged by Plaintiffs against Defendant TRINITY UNIVERSITY.

2.     Defendant further specially alleges that all of Plaintiffs' claims are barred because Plaintiff Alison Steele is not a proper party to the suit, and does not have standing to sue for the allegations pled against Defendant TRINITY UNIVERSITY contained in Plaintiffs' Original Petition and any amendments thereto. Plaintiff Alison Steele is, therefore, barred from any recovery of damages, either in law or in equity against Defendant TRINITY UNIVERSITY.

3.     Defendant TRINITY UNIVERSITY denies the applicability of 42 U.S.C § 1983. Defendant TRINITY UNIVERSITY is not a state actor.

4.     Defendant TRINITY UNIVERSITY denies that it was deliberately indifferent in violation of Title IX.

5.      To the extent that Title IX allows Plaintiff to proceed on a theory that allows the imposition of civil liability based on sexual harassment and sexual assault perpetrated by a third-party non-student in contexts not under the substantial control of Defendant TRINITY UNIVERSITY, Title IX exceeds the scope of Congress's power under the Fourteenth Amendment and fails to provide Defendant TRINITY UNIVERSITY with sufficient notice of this type of liability under the Spending Clause.

6.      To the extent Title IX allows Plaintiff to proceed on a theory that Defendant TRINITY UNIVERSITY's alleged acts or omissions caused a heightened risk that made Cayley Mandadi vulnerable to sexual assault and sexual harassment of which it had no knowledge, Title IX exceeds the scope of Congress's power under the Fourteenth Amendment and fails to provide Defendant TRINITY UNIVERSITY with sufficient notice of this type of liability under the Spending Clause.

7.      Plaintiff's request for punitive damages in connection with her Title IX claim is barred by law.

8.      Defendant TRINITY UNIVERSITY pleads the limitation on monetary damages for charitable organizations as set forth in Section 84.006 of the Texas Civil Practice & Remedies Code.  Consequently, Defendant TRINITY UNIVERSITY's liability for monetary damages, if any, is strictly limited to an amount not greater than $500,000.00 for each person and $1,000,000.00 for each single occurrence of bodily injury or death.

9.      Defendant TRINITY UNIVERSITY further specially alleges that third parties over whom Defendant TRINITY UNIVERSITY had no control or right of control were negligent in many particulars and such negligence was the sole proximate cause of or a proximate cause of Plaintiff's alleged injuries and damages.

10.     Defendant TRINITY UNIVERSITY pleads the affirmative defense of limit of liability to exemplary damages as set forth in Tex. Civ. Prac. & Rem. Code §§ 41.008, *et seq.* (Vernon 2003).   Consequently, Defendant TRINITY UNIVERSITY's liability for exemplary damages, if any, is strictly limited to the amount equal to the greater of:

a.      Two times the amount of economic damages, plus an amount equal to any non-economic damages found by a jury, not to exceed $750,000.00, or

b.      $200,000.00.

Tex. Civ. Prac. & Rem. Code § 41.008 (Vernon 2003).

Defendant TRINITY UNIVERSITY invokes the constitutional protections of the due process clause of the Fourteenth Amendment of the United States Constitution and the due process requirements of the Texas Constitution, which both provide procedural and substantive protections for deprivation of property without due process of law.

Subject to the above, Defendant TRINITY UNIVERSITY generally denies the allegations contained in *Plaintiffs' Original Petition* and any amendments thereto and demands strict proof thereof by a preponderance of the credible and believable testimony and evidence.

WHEREFORE, PREMISES CONSIDERED, Defendant TRINITY UNIVERSITY prays that the Court enter judgment in conformance with the fact and law findings of the Court and jury and in conformance with the relief requested herein, and that if the judgment of the Court is appropriate, Defendant TRINITY UNIVERSITY recover its costs of court, and for all other and further relief to which Defendant TRINITY UNIVERSITY is justly entitled whether at law or in equity.

Respectfully submitted,

ALLEN, STEIN & DURBIN P.C.
6243 I.H. 10 West, 7th Floor
P.O. Box 101507
San Antonio, Texas  78201
(210) 734-7488 (Telephone)
(210) 738-8036 (Facsimile)

JENNIFER GIBBINS DURBIN
State Bar No. 07840500
jdurbin@asdh.com

KATHERINE M. WILLIS
State Bar No. 24033472
kwillis@asdh.com

**ATTORNEYS FOR DEFENDANT
TRINITY UNIVERSITY**

### *CERTIFICATE OF SERVICE*

This is to certify that a true and correct copy of the above and foregoing *Original Answer of Defendant Trinity University* was this the 13th day of August 2021 forwarded via e-filing to:

Mr. Richard T. Stilwell
Ms. Amanda R. Pierson
STILWELL LAW FIRM PLLC
214 Glenwood Drive
Houston, Texas 77007
*Attorney for Plaintiffs*
*Alison Steele, Individually and on*
*Behalf of the Estate of Cayley Mandadi*

JENNIFER GIBBINS DURBIN
KATHERINE M. WILLIS

#2145264/4159 1264/KMW/lb

6

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Beall on behalf of Jennifer Durbin
Bar No. 07840500
lbeall@asdh.com
Envelope ID: 56281773
Status as of 8/16/2021 8:27 AM CST

Associated Case Party: Estate of Cayley Mandadi

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Tom Stilwell | | tom@tstilwell.com | 8/13/2021 10:11:37 AM | SENT |
| E-Filing Stilwell Law Firm | | e-filing@tstilwell.com | 8/13/2021 10:11:37 AM | SENT |
| Amanda Pierson | | Amanda@Tstilwell.com | 8/13/2021 10:11:37 AM | SENT |

Associated Case Party: Trinity University

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jennifer G.Durbin | | jgd-service@asdh.com | 8/13/2021 10:11:37 AM | SENT |
| Jennifer G.Durbin | | jdurbin@asdh.com | 8/13/2021 10:11:37 AM | SENT |
| Katherine Willis | | kwillis@asdh.com | 8/13/2021 10:11:37 AM | SENT |

Associated Case Party: Alison Steele

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| E-Filing Stilwell Law Firm | | e-filing@tstilwell.com | 8/13/2021 10:11:37 AM | SENT |

Associated Case Party: Cayley Mandadi

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| E-Filing Stilwell Law Firm | | e-filing@tstilwell.com | 8/13/2021 10:11:37 AM | SENT |